## BLANSET *v*. CARDIN, AS GUARDIAN OF DAY-LIGHT, A MINOR, ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 244.    Argued April 20, 1921.—Decided May 16, 1921.

1. The transmission of restricted Indian allotments by will is governed by the Act of June 25, 1910, c. 431, § 2, 36 Stat. 856, amended February 14, 1913, c. 55, 37 Stat. 678, and the regulations thereunder prescribed by the Secretary of the Interior.  P. 323.
2. Oklahoma Code, § 8341, providing that no woman while married shall devise ("bequeath") more than two-thirds of her property away from her husband, does not affect a will made by a Quapaw woman and approved by the Secretary after her death, so devising her restricted land.  P. 322.

261 Fed. Rep. 309, affirmed.

THIS was a suit in the District Court of the Eastern District of Oklahoma, brought by the present appellant, to assert an interest in land, claimed by him as heir of his wife, and by the defendants as devisees in her will. The District Court dismissed the bill and the Circuit Court of Appeals affirmed the decree.  The facts are stated in the opinion.

*Mr. Henry C. Lewis* and *Mr. Paul A. Ewert* for appellant.

*Mr. A. C. Wallace* for appellees.

*Mr. Leslie C. Garnett*, Special Assistant to the Attorney General, with whom *The Solicitor General* and *Mr. H. L. Underwood*, Special Assistant to the Attorney General, were on the brief, for the United States, by special leave of court.

Mr. Justice McKenna delivered the opinion of the court.

Appellant brought this suit to have himself declared to be owner of an undivided one-third interest in all lands (they are described in the bill) and other property of which his wife, Fannie Crawfish Blanset, died seised or possessed, free and clear of all claims and demands of the appellees; and to declare void a will of his wife and its approval by the Secretary of the Interior.

The basis of the bill is the contention that under the laws of Oklahoma no man and no woman while married shall bequeath more than two-thirds of his or her property away from the other and that the prohibition extends to an Indian woman's allotment, under acts of Congress, of restricted lands.

The bill is quite involved and contains many repetitions. Its ultimate propositions may be paraphrased as follows: Appellant is a white man, and his wife, Fannie Crawfish Blanset, was an Indian woman of the Quapaw Tribe. She was an allottee of the lands herein involved which were restricted lands, so called; that is, non-alienable for the period of twenty-five years. She made a will devising her land to appellees, they being her children or grandchildren, and bequeathed to them also all trust funds which might be held by the United States for her. The will was approved by the Assistant Commissioner of Indian Affairs and by the Assistant Secretary of the Interior under and in pursuance of the provisions of an Act of Congress of June 25, 1910, c. 431, 36 Stat. 855, 856, as amended February 14, 1913; c. 55, 37 Stat. 678, and filed in the office of the Secretary of the Interior where such wills are properly and lawfully filed, and are of record.

Congress by the foregoing, and other legislation, provided "that the state laws of descent should apply to

Indian allotments and to interests therein, and that the Secretary of the Interior should be governed by the same," and that "Section 8341 of the Code of Oklahoma created an indefeasible descent in favor of the husband and that the will of a wife which attempts to will away from her husband more than two-thirds of her estate is therefore void and of no effect to the extent to which it attempts so to do, and that in such case the husband takes by descent to the same extent." By that section appellant is made heir to property worth $40,000 of the estate of his wife, while the will gives him only $5.00; that the will is null and void and that to the extent of his heirship his wife died intestate, and that he is an heir at law of one-third of her estate; that notwithstanding § 8341 each of the appellees is claiming to be the owner of a one-third undivided interest in and to all of the remaining restricted lands, inherited or otherwise, of which Fannie Crawfish Blanset died possessed and of a one-third interest to all trust funds held by the United States to her use and benefit, such claims being made under and by virtue of the will.

There is an allegation in the bill to the effect that appellant's wife left little or no personal property except moneys held in trust for her from the sale of inherited Indian lands by the United States, that by § 8419 dower and curtesy were abolished and by § 8418 it was provided as follows: "If the decedent leave a surviving husband or wife, and only one child, or the lawful issue of one child, [the estate must be distributed] in equal shares to the surviving husband, or wife and child, or issue of such child. If the decedent leave a surviving husband or wife, and more than one child living, or one child living and the lawful issue of one or more deceased children, one-third to the surviving husband or wife, and the remainder in equal shares to his children, and to the lawful issue of any deceased child, by right of representation." And by

§ 6328 it is provided: "Upon the death of either hus-
band or wife, the survivor may continue to possess and
occupy the whole homestead, which shall not in any
event be subject to administration proceedings, until it
is otherwise disposed of according to law; and upon the
death of both husband and wife the children may con-
tinue to possess and occupy the whole homestead until
the youngest child becomes of age."

It is alleged "that Section 1 of the Act of June 25, 1910,
of which the Act of February 14, 1913, is amendatory, is
as follows: 'That when any Indian to whom an allotment
of land has been made, or may hereafter be made, dies
before the expiration of the trust period and before the
issuance of a fee simple patent, without having made a
will disposing of said allotment as hereinafter provided,
the Secretary of the Interior, upon notice and hearing,
under such rules as he may prescribe, shall ascertain the
legal heirs of such decedent.'"

On motion of defendants (appellees here) the bill was
dismissed for want of equity. The ruling was affirmed
by the Circuit Court of Appeals.

The case is not in broad compass and presents as its
ultimate question the accordance or discordance of the
laws of Congress and the laws of the State; and whether
there is accordance or discordance depends upon a com-
parison of § 8341 of the Oklahoma Code, upon which ap-
pellant relies, and the acts of Congress referred to in the
bill and what was done under them.

That comparison we proceed to make. By § 8341 of
the Code "Every estate and interest in real or personal
property to which heirs, husband, widow, or next of kin
might succeed, may be disposed of by will: Provided,
that no marriage contract in writing has been entered
into between the parties; no man while married shall
bequeath more than two-thirds of his property away
from his wife, nor shall any woman while married be-

queath more than two-thirds of her property away from her husband;  . . . ."

The provision of the Code is determinative, appellant contends, because the law of "Descents and Distributions" of Arkansas was made applicable to the Indian Territory May 2, 1890 (c. 182, 26 Stat. 94, 95), and extended in its application in 1904 (c. 1824, 33 Stat. 573), and, while at those times "testamentary power had not been given to restricted allottees [the property in this case was a restricted allotment and the period of restriction had not expired] of any tribe, but the property descended, as to all tribes, wherever located, according to the local law," yet when Oklahoma was admitted as a State the Arkansas law was superseded by the Oklahoma Code. For this *Jefferson* v. *Fink*, 247 U. S. 288, is adduced.

But against the contention and conclusion the Act of. Congress approved February 14, 1913, c. 55, 37 Stat. 678, is opposed. That act amends § 2 of the Act of June 25, 1910, so as to read as follows:

"Sec. 2. That any persons of the age of twenty-one years having any right, title, or interest in any allotment held under trust or other patent containing restrictions on alienation or individual Indian moneys or other property held in trust by the United States shall have the right prior to the expiration of the trust or restrictive period, and before the issuance of a fee simple patent or the removal of restrictions, to dispose of such property by will, in accordance with regulations to be prescribed by the Secretary of the Interior. *Provided, however,* That. no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the Secretary of the Interior: *Provided further,* That the Secretary of the Interior may approve or disapprove the will either before or after the death of the testator, and in case where a will has been approved and it is subse-

quently discovered that there has been fraud in connection with the execution or procurement of the will the Secretary of the Interior is hereby authorized within one year after the death of the testator to cancel the approval of the will, and the property of the testator shall thereupon descend or be distributed in accordance with the laws of the State wherein the property is located: *Provided further*, That the approval of the will and the death of the testator shall not operate to terminate the trust or restrictive period, but the Secretary of the Interior may, in his discretion, cause the lands to be sold and the money derived therefrom, or so much thereof as may be necessary, used for the benefit of the heir or heirs entitled thereto, remove the restrictions, or cause patent in fee to be issued to the devisee or devisees, and pay the moneys to the legatee or legatees either in whole or in part from time to time as he may deem advisable, or use it for their benefit: *Provided also*, That sections one and two of this Act shall not apply to the Five Civilized Tribes or the Osage Indians."

The Secretary of the Interior made regulations which were proper to the exercise of the power conferred upon him and the execution of the act of Congress, and it would seem that no comment is necessary to show that § 8341 is excluded from pertinence or operation.

But this conclusion counsel resists. He says "as long as restrictions have not been removed the allotment is subject to the plenary power and control of Congress," but "when restrictions are removed the allotment automatically becomes subject to the state law." That is, and to make application to the pending case, at the instant his wife died, appellant became heir at law to one-third of her property under the laws of the State. Appellant's reasoning is direct and confident. By his wife's death, he asserts, her allotment was emancipated from government control; that under § 8341 her will was void; she, there-

fore, died intestate and he became her heir of an undivided one-third of her allotment under § 8418 set out in the bill.

And the further contention is that § 8341 is continued because the act of Congress does not expressly provide how the land shall be devised, and because it recognizes that the state laws of descent are applicable in case the Secretary disapproves the will after the death of the testator.

If the first contention be true, the act of Congress is reduced to impotence by its contradictions. According to the contention it permits a will and immediately provides for its defeat at the very instant it is to take effect and can only take effect. Such antithetical purpose cannot be imputed to Congress and it is repelled by the words of § 2. They not only permit a will but define its permissible extent, excluding any limitation or the intrusion of any qualification by state law. They provide that one having an interest "in any allotment held under trust or other patent containing restrictions on alienation . . . shall have the right prior to the expiration of the trust or restrictive period, and before the issuance of a fee simple patent or the removal of restrictions, to dispose of *such property* [italics ours] by will, in accordance with regulations to be prescribed by the Secretary of the Interior." And it is further provided "that the Secretary of the Interior may approve or disapprove the will either before or after the death of the testator " and that neither circumstance shall "operate to terminate the trust or restrictive period, but the Secretary of the Interior may, in his discretion, . . . cause patent in fee to be issued to the devisee or devisees."

To the other contention (if it may be called such) the answer is that the contingency (disapproval of the will after the death of the testator) did not occur and besides, there were alternatives to the contingency irreconcilable with the disposition of the property under the state code.

The act of Congress is careful of conditions. In the first instance it is concerned with testacy, that is, the existence of a will. A will existing, the allotment is disposed of by it. A will not existing—either not executed or if executed, cancelled, there is intestacy, and the state laws of descent and distribution obtain. In the present case there is a will and it is uncancelled and, therefore, the contention of appellant is untenable. And it will also be observed by recurring to the act of Congress, powers are invested in the Secretary which preclude interference or control by anybody, or right in anybody to have cancelled "the patent in fee" which is empowered "to be issued to the devisee or devisees," a right appellant asserts in the present case. In a word, the act of Congress is complete in its control and administration of the allotment and of all that is connected with or made necessary by it, and is antagonistic to any right or interest in the husband of an Indian woman in her allotment under the Oklahoma Code. And we agree with the Court of Appeals that the act of Congress was the prompting of prudence to afford "protection to dependent and natural heirs against the waste of the estate as the result of an unfortunate marriage and enforced inheritance by state laws." And there can be no doubt that the act was the suggestion of the Interior Department, and its construction is an assistant, if not demonstrative criterion, of the meaning and purpose of the act. *Swigart* v. *Baker*, 229 U. S. 187; *Jacobs* v. *Prichard*, 223 U. S. 200; *United States* v. *Cerecedo Hermanos*, 209 U. S. 337. And the regulations of the Department are administrative of the act and partake of its legal force.

Our conclusion is the same as that of the Court of Appeals, "that it was the intention of Congress that this class of Indians should have the right to dispose of property by will under this act of Congress, free from restrictions on the part of the State as to the portions to be

conveyed or as to the objects of the testator's bounty, provided such wills are in accordance with the regulations and meet the approval of the Secretary of the Interior." The court added that the conclusion was in accord with the views of the Supreme Court of the State, referring to *Brock* v. *Keifer*, ·59 Oklahoma, 5.

*Decree affirmed.*