## BRONAUGH v. HOLMES.

No. 14801—Opinion Filed April 8, 1924.

Rehearing Denied April 29, 1924.

(Syllabus.)

1. **Indians—Restrictions of Minority — Repeal.**

The restrictions of minority imposed by the Atoka Agreement are repealed by the Choctaw and Chickasaw Supplemental Agreement.

2. **Same—Statutes.**

A minor, three-fourths blood Choctaw Indian, whose patent to his surplus allotment was issued more than one year prior to May 27, 1908, and who prior to said date had not disposed of any part thereof, owned one-fourth of his surplus allotment as wholly unrestricted at the time of the passage of the act of May 27, 1908, and said act did not reimpose restrictions on said one-fourth of his allotment or on his right to convey the same.

Error from District Court, Grady County; Will Linn, Judge.

Action by A. A. Holmes against L. W. Bronaugh and others. Judgment for plaintiff and defendant named brings error. Reversed and remanded.

Hatchett & Ferguson, for plaintiff in error.

Bond, Melton & Melton, for defendant in error.

LYDICK, J. This is a suit instituted in the district court of Grady county, Okla., on the 21st day of November, 1922, by A. A. Holmes, as plaintiff, against L. W. Bronaugh and others, involving the title and right of possession of 30 acres of land, a portion of the allotment of John Edwards, a three-fourths blood Choctaw Indian, who became 21 years of age some time in the month of October, 1919. The case was submitted to the trial court on an agreed statement of facts, and the decision turns on the validity of a deed given by John Edwards on June 24, 1922, he then being an adult, but at said time his restrictions had not yet been removed by the Secretary of the Interior. For a proper consideration, the deed conveyed one-fourth of his surplus allotment to L. W. Bronaugh, plaintiff in error. This was the first one-fourth and all of the surplus which the allottee had conveyed. A. A. Holmes, defendant in error, claimed through a later deed given by John Edwards after the removal of his restrictions. The judgment of the lower court held the deed to Bronaugh invalid, and he brings the case here on appeal.

In the first part of section 29, Atoka Agreement, provisions are made for the selection of allotments for minors, and therein the sale of the entire allotment of the minor is restricted throughout his minority. In the latter part of section 29, Atoka Agreement, it is affirmatively recited that all surplus allotments, aside from the homestead, shall be alienable by all members of the tribe in specified portions after one, three, and five years, respectively. By the first part of section 29, Atoka Agreement, the minor is restricted even beyond the one, three, and five year period until he reaches his majority. Being a member of the tribe, he is by the latter section affirmatively granted the power to convey after the expiration of said term of years and before he reaches his majority. These parts of section 29, Atoka Agreement, are inconsistent and in conflict with each other. The provisions of section 70, Choctaw and Chickasaw Supplemental Agreement, correspond largely to the provisions of that part of section 9, Atoka Agreement, where provisions are made for the selection of allotments for minors, but the restrictions of minority contained in the section of the Atoka Agreement are omitted from this section of the Supplemental Agreement. That part of section 16, Choctaw and Chickasaw Supplemental Agreement, corresponds in part to the provisions of section 29, Atoka Agreement, and therein it is provided, as was in the Atoka Agreement, that all surplus allotments, aside from the homestead, should be alienable by all members of the tribe in specified portions after one, three, and five years, respectively. Apparently conscious of the inconsistent and conflicting provisions in the Atoka Agreement as to the rights and restrictions of minors, the framers of the Supplemental Agreement eliminated such conflicting provisions in writing the Supplemental Agreement. The affirmative grant of power, contained in section 16, Choctaw and Chickasaw Supplemental Agreement, by which all members of the tribe are given the power to alienate their surplus allotments in specified portions after one, three, and five years, respectively, necessarily includes minors, as they are members of the tribe. This is inconsistent with and in direct conflict with section 9, of the Atoka Agreement, wherein minors are affirmatively restricted during all of the years of their minority. By operation of law and by the specified provisions of section 68, Choctaw and Chickasaw Supplemental Agreement, repealing all provisions of the Atoka Agreement inconsistent with the Supplemental Agreement, the mi-

nority restriction contained in section 29 of the Atoka Agreement is repealed.

There is no such uncertainty here as to make applicable the rule favoring the interpretation of the law and treaties most favorable to the Indian, or for adopting the construction already given same by the executive department of the government. Such rules and constructions, for reasons stated in the rules themselves, are applicable only when from an examination of the law and treaties, the court is in doubt as to the intent of the makers and framers thereof. Jones v. Meehan, 175 U. S. 1, 44 L. Ed. 49, 20 Sup. Ct. Rep. 1; Starr v. Long Jim, 227 U. S. 613, 624, 57 L. Ed. 670, 671, 33 Sup. Ct. Rep. 358; Franklin v. Lynch, 233 U. S. 269, 272, 58 L. Ed. 954, 957, 34 Sup. Ct. Rep. 505; United States v. Celestine, 215 U. S. 290, 54 L. Ed. 199, 30 Sup. Ct. Rep. 93; Blanser v. Cardin, 261 Fed. 309; Blanser v. Cardin, 256 U. S. 319, 41 Sup. Ct. 519.

Reference is made to the case of Hopkins et al. v. U. S., 235 Fed. 95, where the Circuit Court of Appeals of this circuit analyzes the Original and Supplemental Creek Treaties on this point, and holds that the minority restrictions in the Original Creek were not repealed by the Supplemental Greek Agreement. The case is not analogous to the case at bar. In section 4 of the Original Agreement, like the first part of section 29, Atoka Agreement, the minor is restricted during his minority. Section 7 of the Original Creek Agreement treats of the subject-matter contained in the latter part of section 9 of the Atoka Agreement, and section 16 of the Choctaw and Chickasaw Supplemental Agreement, but said section of the Original Creek Agreement, different from the corresponding sections in the Atoka Agreement and Supplemental Choctaw and Chickasaw Agreement, does not contain a grant of power to the members of the tribe affirmatively authorizing them to alienate their surplus lands. It is a negative provision. It is not a grant; it is a restriction of power. It provides that the members of the Creek Tribe shall not have the power to alienate their surplus lands for a period of five years. The language, of course, includes the minors. Under these provisions of the Original Creek Agreement, the minor was by section 4 restricted during all the years of his minority, and by section 7 he was also restricted for a period of five years. By these sections of the Original Creek Agreement, the minor was under two restrictions, but given no affirmative grant of power to alienate. Restrictions containing no grant of power cannot conflict. A restriction and a

grant of power may conflict. In section 16 of the Supplemental Creek Agreement, we find the same general five year restriction of alienation by all members of the tribe, including minors, as is found in section 7 of the Original Creek Agreement. Again, we find this new section contains no grant of power to the members of the Creek Tribe to alienate their surplus lands after the expiration of the five year period named. After the expiration of this five year restrictive period, no members of the Creek Tribe except minors were by virtue of the Creek Supplemental Agreement under any restrictions as to the sale of their surplus lands. Thereunder and after five years, all members of the Creek Tribe except minors had the right to sell their surplus lands. This right they had not by virtue of any specific grant of power so to do given by any treaty or act of Congress, but as a constitutional and inherent right incident to unrestricted ownership. In the case of the Choctaws and Chickasaws, the right to convey after the expiration of the one, three, and five year restrictive period was, by their Supplemental Agreement, granted to all members of the tribe, and this naturally included minors. The section of the Supplemental Creek Agreement, like its corresponding section in the Original Creek Agreement, is a restriction without grant of power, and it therefore cannot be inconsistent with any other restriction because both restrictions can be enforced. It therefore clearly appears that the minority restrictions contained in section 4 of the Original Creek Agreement are not in conflict with section 16 of the Supplemental Creek Agreement. The Supplemental Creek Agreement does not repeal the provisions of the Original Creek Agreement not inconsistent therewith, and therefore the minority restrictions contained in the Original Creek Agreement must stand as effective. This is an entirely different situation from what we have found in the case of the two treaties with the Choctaws and Chickasaws, and the decision of the Circuit Court of Appeals in the case of Hopkins v. U. S., supra, interpreting the Creek Agreements, is not in point of authority in the case at bar. We therefore hold that upon the adoption and approval of the Choctaw and Chickasaw Supplemental Agreement, John Edwards, although then a minor, was under no restriction concerning the sale of his surplus allotment, except that contained in section 16 of the Choctaw and Chickasaw Supplemental Agreement. The act of April 21, 1904, imposed no restrictions, and the restrictions imposed by the Choctaw and Chickasaw Supplemental Agreement run with the land.

See Gannon v. Johnston, 61 L. Ed. (U. S.) 622. As his patent was issued August 24, 1905, as the agreed statement of facts recites, the restriction as to the time when he might sell his first one-fourth of his surplus allotment had expired at the time of the enactment by Congress of the act of May 27, 1908. The deed involved in this case covers this one-fourth of the allotment.

In the case of the U. S. v. Bartlett, 59 L. Ed. (U. S.) 136, and concerning this act of May 27, 1908, the court said:

"Restrictions on alienation by Indian allottees which have terminated by the lapse of time prescribed for their existence have 'been removed,' within the meaning of the provision of the act of May 27, 1908 (35 Stat. at L. 312, chap. 199), section 1, which, while extending or enlarging the period of such restrictions in respect to all allotted lands of mixed bloods of three-quarters or more Indian blood, declared that 'nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act.'"

It is therefore our opinion that the one-fourth of the surplus allotment of John Edwards which was not under restriction at the time of the passage of the act of May 27, 1908, and which is conveyed by the deed involved in the case at bar, is not affected by the act of May 27, 1908, and that John Edwards, upon attaining the age of majority, as he did in October, 1919, had the right without the removal of his restriction by the Secretary of the Interior, or the aid of the court of probate, to execute the deed to L. W. Bronaugh conveying the one-fourth of his allotment involved in the case at bar, and that said deed was valid and effective. The lower court having held to the contrary, its judgment is hereby reversed, and the case remanded, with instructions to set aside the judgment therein rendered in favor of the defendant in error and against the plaintiff in error, and otherwise proceed in accordance with the law as declared in this opinion.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and WARREN, JJ., concur.